IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **REGINALD D. BOWIE,** | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No. 2:06-CV-0665-RDP |
| | } | |
| **CHASE MANHATTAN BANK USA,** | } | |
| **N.A. and CHASE BANKCARD** | } | |
| **SERVICES, INC.** | } | |
| | } | |
| Defendants. | } | |

**MEMORANDUM OPINION**

The court has before it Chase Manhattan Bank USA, N.A. and Chase Bankcard Services Inc.'s Motion to Compel Arbitration and to Stay or Dismiss Proceedings (Doc. #9) filed on June 23, 2006. The motion has been fully briefed and was under submission, without oral argument, on August 22, 2006.

**I.     Relevant Facts**

Since approximately July 1990, Reginald D. Bowie maintained an active credit account with Chase Manhattan Bank USA, N.A. and Chase Bankcard Services, Inc. (collectively referred to as "Chase"). (Doc. #9). On December 7, 2003, Reginald D. Bowie was called to active duty with the Army National Guard. (Doc. #1). Bowie called to notify Chase that he was called to active duty and would be serving in Iraq. (Doc. #1).

As part of the process of opening his account, Chase sent Bowie a "Credit Agreement" establishing the terms of Bowie's account, which Bowie accepted by making charges to the account. (Doc. #9)  The Credit Agreement contained provisions that, among other things, permitted Chase to amend the Credit Agreement. (Doc. #9, Ex. A, ¶ 5)  This provision reads in pertinent part:

> We [Chase] can amend *any* of the terms of this Agreement at *any* time, and we can set the effective date for any such amendment. We will *notify you by mail* of any such amendment as required by law. The amended terms of this Agreement can apply to all outstanding unpaid indebtedness and any future transactions on your Account.

(Doc. # 9, Ex. A, ¶ 5) (emphasis added).

In April 2002, Chase sent Bowie a document entitled "ARBITRATION AGREEMENT AND CHANGE IN TERMS NOTICE" (hereinafter "Notice"). The Notice informed Bowie of the addition of an arbitration provision to the Credit Agreement, which provides in pertinent part:

> Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which is used) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember [Credit] Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account, will, at the election of either you or us, be resolved by binding arbitration. This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement.

(Doc. # 9, Ex. A, ¶ 6) (hereinafter "Arbitration Agreement").

Bowie was given the opportunity to reject the Arbitration Agreement contained in the Notice by opting out of the change in terms. The opt-out process was described in a paragraph entitled "YOUR RIGHTS TO CHOOSE NOT TO ACCEPT THE CHANGES IN THIS NOTICE," which fully explained the procedure:

> The changes described in this Notice will not become effective if you send us a written letter that you chose not to accept them. You may choose not to accept the Arbitration Agreement section, the Other Changes to your Agreement section, or both. If the only choice you make is not to accept the Arbitration Agreement section, your account will remain open. If you do not accept the Other Changes to your Agreement section, your account will be closed to further use (if it is not already closed). In any event, we must receive your letter no later than May 24, 2002.

(Doc. #9, Exhibit A, ¶ 7). Since Chase did not receive the Notice returned as undeliverable by the US Postal Service, nor did it receive a response rejecting the changed terms from Bowie, Chase deemed Bowie to have accepted the changed terms of the Notice, including his implied agreement to be bound by the Arbitration Agreement.

In February 2004 (Doc. #6), while Bowie was training at Fort Benning, he became aware of unauthorized charges on his Chase credit account. (Doc. #1). Bowie contacted Chase to report the unauthorized charges, which form the basis for this litigation. (Doc. #1). Bowie later left for a tour of duty with his Army National Guard Unit in Iraq on February 16, 2004 and remained there for one year. (Doc. #1). Upon his return in February 2005, Bowie learned of additional unauthorized charges to his account, and reported these to Chase, completing the fraud affidavit as requested by Chase, and subsequently reported the unauthorized charges to the local police department. (Doc. #1). Beginning in March 2005, Chase and its representatives called Bowie in order to collect the amount overdue on his account and represented to credit reporting services that the account was overdue.

On April 4, 2006, Bowie filed his Complaint in this case seeking monetary damages against Chase. The Complaint contained five counts including: invasion of the right to privacy under state law (Doc. # 1, Count I); negligent, reckless or wanton failure to adopt policies designed to verify charges made to customer accounts and to issue new cards to customers known to be absent from

their primary addresses, presumably under state law (Doc. #1, Count II); negligent enablement of identity theft, presumably under state law (Doc. #1, Count III); defamation, libel and slander committed against Bowie (Doc. #1, Count IV); and, finally, placing Bowie in a false light, again presumably a claim made under state law (Doc. #1, Count V).  Bowie has estimated his compensatory and punitive damages to total $500,000.

On May 10, 2006, Chase filed its Answer with the court, generally denying all of Plaintiff's claims and the specific factual allegations made by Plaintiff, as well as asserting thirty-two affirmative defenses. (Doc. #6).  On June 23, 2006, Chase filed its Motion to Compel Arbitration and to Stay or Dismiss Proceedings.  (Doc. # 9).  On August 22, 2006, Bowie filed his Response to Chase's Motion to Compel Arbitration and to Stay or Dismiss Proceedings, agreeing that Chase's Motion to Compel Arbitration is due to be granted and asking that this court retain jurisdiction pending resolution of the arbitration.

**II.    Discussion**

There is no dispute that the arbitration clause contained in the Credit Agreement as amended by the Notice and Arbitration Agreement is subject to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA").  "In enacting the FAA, Congress demonstrated a 'liberal federal policy favoring arbitration agreements.'" *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citation omitted).  As such, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Franklin*, 177 F.3d at 947.  "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)(emphasis in original).

Arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

An arbitration agreement is specifically enforceable under the FAA if the following requirements are met: (1) the existence of a written agreement to arbitrate claims; (2) a nexus to interstate commerce; and (3) coverage of the claims by the arbitration clause. 9 U.S.C. § 2. Plaintiff Bowie does not dispute that the requirements to enforce an arbitration agreement under the FAA have been satisfied in this case.[1] Furthermore, Bowie agrees to submit the dispute to arbitration,

---

[1] Moreover, the court finds that those requirements are satisfied. The Arbitration Agreement accepted by Bowie is unquestionably broad enough in scope to encompass the claims and allegations in this action. "[I]n order to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance." *H.L. Fuller Constr. Co. v. Indus. Dev. Bd.*, 590 So. 2d 218, 222 (Ala. 1991). There is no such exclusion in this case. The claims in this action, as outlined in the "Relevant Facts" portion of this opinion, *supra*, specifically concern and arise out of the credit card account covered by the Credit Agreement as amended by the Arbitration Agreement contained in the Notice.

Moreover, it is clear that the Arbitration Agreement accepted by Plaintiff Bowie was incorporated into the Credit Agreement by the terms of the latter (allowing Chase to amend the Credit Agreement at any time upon notification to Bowie by mail) and that interstate commerce is affected by the transaction of the diverse parties in this case. Although Bowie avers that he does not recall receiving the Notice containing the Arbitration Agreement (Doc. # 12), Chase maintains that it did not receive the Notice mailed to Bowie returned as undeliverable and that Bowie did not object via the procedures outlined in the Notice to the alteration of the Credit Agreement by the Arbitration Agreement. (Doc. # 9). Under these facts and relevant Alabama contract law, the court finds that Bowie's use of the credit card after receipt of the Credit Agreement is sufficient to bind him to the Arbitration Agreement later incorporated into it, even thought he did not sign the arbitration agreement directly. The Eleventh Circuit has made clear that "no signature is needed to satisfy the FAA's written agreement requirement [because] . . . . the plain language of § 2 requires that the arbitration provision be "written;" [i]t does not, however, require that the agreement to arbitrate be signed by either party." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005); *see also Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 62 (5th Cir.1987) ("It is established that a party may be bound by an agreement to arbitrate even in the absence of his signature."); *Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F.Supp.2d 1341, 1346 (M.D.Fla.2001) ("While an agreement to arbitrate must be in writing, there is no requirement that the writing be signed."); *AmSouth Bank v. Looney*, 883 So.2d 1207, 1214 (Ala.

asking the court to retain jurisdiction over the case by staying all matters pending resolution of the arbitration.

However, the court finds that dismissal of the action is appropriate, as the court has determined all claims to be arbitrable, leaving no current role for the court to play in the resolution of the dispute. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that dismissal, rather than a stay, is required, when all of the issues raised must be submitted to arbitration, noting that "[g]iven our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose."). The court is also mindful of considerations of judicial economy that militate in favor of dismissal with prejudice. *See, e.g., Stiles v. Home Cable Concepts, Inc.,* 994 F. Supp. 1410, 1415-1416 and 1418-1419 (M.D. Ala. 1998) (finding that the matter was due to be dismissed with prejudice and sent to arbitration because "[w]here all of the issues raised in a complaint must be submitted to arbitration . . . a dismissal of the action is appropriate, since retaining jurisdiction and staying the action does not serve judicial economy."); *Clayton v. Woodmen of World Life Ins. Soc'y*, 981 F. Supp. 1447 (M.D. Ala. 1997) (same).  However, out of an abundance of caution, the court's dismissal will be without prejudice to the right of any party to petition the court to enforce the arbitration award.

**III.   Conclusion**

As Chase and Bowie have agreed to submit their claims to arbitration, and because the Arbitration Agreement appended to the Credit Agreement is enforceable under the FAA, the court finds that each of Plaintiff Bowie's claims in this case are subject to arbitration.  Accordingly, the

---

2003)

court will order the parties to arbitration and dismiss the case without prejudice. A separate order will be entered.

       **DONE** and **ORDERED** this   25th   day of August, 2006.

                                  **R. DAVID PROCTOR**
                                  UNITED STATES DISTRICT JUDGE